Steven W. Call (5260)
Elaine A. Monson (5523)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
scall@rqn.com
emonson@rqn.com
  *Attorneys for State Bank of Southern Utah and Attorneys*
  *for GW Green Family Limited Partnership*

Marcus R. Mumford (12737)
MUMFORD PC
405 South Main Street, Suite 975
Salt lake City, UT  84111
Telephone:  (801) 428-2000
mrm@mumfordpc.com
  *Attorneys for GW Green Family Limited Partnership, Garth O. Green Enterprises, Garth O.*
  *Green, Michael Green and Wendy Green*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re: | Bankruptcy No. 15-24513 |
|---|---|
| GRASS VALLEY HOLDINGS, L.P., | (Chapter 11) |
| Debtor. | The Honorable R. Kimball Mosier |

## MOTION BY GW GREEN FAMILY LIMITED PARTNERSHIP
## AND STATE BANK OF SOUTHERN UTAH FOR AN ORDER (1)
## TERMINATING THE AUTOMATIC STAY OR (2) IN
## THE ALTERNATIVE, FOR ADEQUATE PROTECTION
## AND MEMORANDUM IN SUPPORT THEREOF

Pursuant to 11 U.S.C. §§ 105, 361, 362(d)(1) and (d)(2), § 363(c)(2), (c)(3), (c)(4) and (e) and Bankruptcy Rules 4001, 9013 and 9014, GW Green Family Limited Partnership ("**GW Green**") and State Bank of Southern Utah ("**State Bank**") (collectively "**Movants**") jointly move the Court for  (1) an order terminating the automatic stay against the Debtor's Springville property (the "**Property**") and/or the rents generated therefrom for cause for the reasons set forth below, or (2) in the alternative, for an order adequate protection.   In support hereof, Movants state as follows:

## PRECISE RELIEF SOUGHT

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105, 361, 362(d)(1) and (d)(2), § 363(c)(2), (c)(3), (c)(4) and (e) of Title 11 of the United States Code, and Rules 4001, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure.

3.      The precise relief sought by Movants is the termination from the automatic stay for cause to permit GW Green to foreclose its lien on the Springville Property that secures the Barnes Loans (see definitions below) and to exercise any other rights and remedies that it has under the Barnes Loan documents.   In the alternative, Movants request that the automatic stay be terminated as against the rents generated from the Springville property so that GW Green may enforce its security interest in those rents by enforcing and collecting all rents collected post-petition.  If the Court does not terminate the automatic stay regarding the Property and/or the rents generated therefrom GW Green requests that the Court order the Debtor, Grass Valley

Holdings L.P., to make adequate protection payments in the amount of $30,000 beginning from

the May 15, 2015 petition date, except that the adequate protection payment for the month of

May be pro-rated to $15,000.

## GROUNDS SUPPORTING THE MOTION

Movants assert that cause exists to terminate the automatic stay under 11 U.S.C. §

362(d)(1) for the following reasons.  First, cause exists because of the lack of any adequate

protection payments to GW Green which is causing harm to GW Green.  Second, cause exists

because of the Debtor's bad faith in failing to comply with the Court's order to place the post-

petition rents into a separate DIP bank account and because it has been using GW Green's cash

collateral without its consent or court authorization.  Third, cause exists because the Debtor

cannot propose and confirm a reorganization plan that is going to alter the terms of payment of

the Barnes Loans.  Fourth, cause exists because of the lack of any post-petition loan payments to

GW Green.

Notwithstanding, if the Court denies Movants' request to terminate the automatic stay for

cause, the Court should at least require that the Debtor provide GW Green with sufficient

adequate protection as a condition of the Debtor's continued possession and use of the rents

flowing from the Springville Property and the continuation of the automatic stay.  The Court has

previously recognized that the rents that the Debtor is collecting constitute GW Green's cash

collateral.  *See* 11 U.S.C. § 363(a).  Furthermore, GW Green has not consented to the use of its

cash collateral by the Debtor as required in 11 U.S.C. § 363(c)(2)(A).  GW Green proposed a use

of cash collateral and adequate protection, a copy which is attached as **Exhibit 14**.  The Debtor

has not responded to the proposal. Also, this Court, after a notice and hearing, has not authorized

3

the use of GW Green's cash collateral under 11 U.S.C. § 363(c)(2)(B).  Moreover, although GW

Green has made multiple requests to the Debtor to pay adequate protection the Debtor has

refused to do so.  GW Green is being harmed because of the Debtor's failure to pay adequate

protection.  Based on the foregoing, grounds exist to grant Movants' motion for relief from the

automatic stay as to the Property and/or the rents associated therewith.

### STATEMENT OF RELEVANT FACTS

4.      Grass Valley Holdings L.P. ("**Grass Valley**" or the "**Debtor**") executed two

promissory notes in favor of Barnes Banking Company in 2002 and 2004 that were in the

amounts of $2,500,000 and $1,880,000, respectively (the "**Barnes Loans**").  Copies of the

promissory notes are attached hereto as **Exhibits 1 and 2**.

5.      On February 16, 2007, a new document entitled Change in Terms Agreement was

created on the first loan.  The new document was signed by Grass Valley and Harward Irrigation

Systems, Inc. ("**Harward**") as joint borrowers and makers.  A copy of this document is attached

hereto as **Exhibit 3**.  The Change in Terms Agreement also extended the maturity date on the

first loan to September 2, 2019.

6.      Similarly, on August 18, 2009, a new document entitled Change in Terms

Agreement was created on the second loan.  The document was signed by Grass Valley, Harward

and Grass Valley MV, L.C. ("**Grass Valley MV**") as joint borrowers and makers.  A copy of this

document is attached hereto as **Exhibit 4**.  The Change in Terms Agreement also extended the

maturity date on the second loan to February 16, 2014.

7.      Based on the foregoing, the co-borrowers on the first loan are Grass Valley and

Harward and the co-borrowers on the second loan are Grass Valley, Harward, and Grass Valley

4

MV.   The Debtor's bankruptcy Schedule H fails to list the co-debtors on either of the loans.  A copy of Schedule H is attached hereto as **Exhibit 5**.

8.       There are also a number of guarantors on the Barnes Loans.

9.       The Barnes Loans were secured by two separate Deeds of Trust encumbering real property located in Springville, Utah at approximately 940 South 2000 West, Springville, Utah (the "**Property**").  Copies of the Deeds of Trust are attached as **Exhibits 6** and **Exhibit 7**.  *See* Declaration of Garth Green at ¶ 4, which was filed on July 9, 2015 [dkt #32], (hereinafter the "**Green Declaration**").

10.       The Deeds of Trust both included assignments of any of the rents generated by the trust properties and back-up security interests.  *See* Exhibits 6 and 7 at p. 1.

11.       Barnes Bank was taken over by the FDIC which was appointed receiver and the two Barnes Loans were sold and assigned by the FDIC to West CRE Venture 2010-2, LLC ("**West CRE**") in 2011.  A copy of the relevant portions of the Assignment of Deed of Trust is attached hereto as **Exhibit 8**.  *See* Green Declaration at ¶¶ 5, 6.

12.       The two Barnes Loans went into default, and on or about February 27, 2014, counsel for West CRE sent a letter to Grass Valley and the co-borrowers notifying them of the default and demanding that certain payments and other obligations be performed or foreclosure proceedings on the Property would be initiated and deficiency actions would be pursued.  A copy of the default and demand letter is attached hereto as **Exhibit 9**.

13.       The defaults on the two Barnes Loans were not cured and on or about July 29, 2014, counsel for West CRE sent letters to all of the tenants with leases on the Property securing the Barnes Loans, demanding that they begin paying the rents to West CRE because of Grass

Valley's default and based on the *Utah Assignment of Rents Act* and the language of the Deeds of Trust.  Copies of the letters to tenants demanding the rents are attached hereto as **Exhibit 10.** *See also* Green Declaration at ¶ 7.

14.    In 2014, GW Green purchased the two Barnes Loans from West CRE Venture 2010-2 and the corresponding promissory notes, Deeds of Trust and other loan documents were assigned, negotiated and transferred to GW Green.  A copy of the Notice of Assignment of Beneficial Interest is attached as **Exhibit 11**.  *See also* Green Declaration at ¶ 8.

15.    Based upon the foregoing events, GW Green is currently the secured creditor of both of the Barnes Loans.

16.    The Barnes Loans were acquired, in part, through a loan made between GW Green and State Bank of Southern Utah ("**State Bank**").  *See* Green Declaration at ¶ 9.  In connection therewith, GW Green executed a promissory note in favor of State Bank.  Pursuant to the terms of the promissory note, the monthly installment payment owed by GW Green to State Bank on the loan is approximately $25,696.23.

17.    In connection with the purchase of the Barnes Loans, State Bank acquired a perfected security interest in both of the Barnes Loans and all related loan documents to secure the loan owing by GW Green to State Bank.  *See* Green Declaration at ¶ 10.

18.    On or about December 9, 2014, counsel for West CRE sent letters to each of the tenants with leases on the Property demanding that they begin paying the rents to GW Green because it had recently acquired the Barnes Loans from West CRE.  Copies of these letters are attached hereto as **Exhibit 12**.  *See also* Green Declaration at ¶ 11.

19. After the December 9, 2014 letters were sent, GW Green received rental payments in the total amount of $273,264.34 from the tenants.

20. Moreover, Abraham C. Bates, as successor trustee under the trust deeds, proceeded with foreclosure proceedings pursuant to the terms of the trust deeds and pursuant to Title 57, *Utah Code Annotated*.

21. This is evidenced by the recorded Notices of Default recorded by Attorney Bates with the Utah County Recorder's Office on January 23, 2015 as entry numbers 5374:2015; 5375:2015 and 5433:2015.

22. On May 15, 2015, Grass Valley filed a voluntarily chapter 11 case in the United States Bankruptcy Court for the District of Utah (the "**Petition Date**").

23. Since the Petition Date, the Debtor has continued to operate its business and to manage its affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

24. Following the Petition Date, the Debtor filed a motion for the turnover of the rents collected by GW Green as identified above and in connection therewith an issue was also addressed regarding whether the rents that accrued post-petition belonged to the Debtor's estate or whether title to the rents had already passed pre-petition to GW Green.

25. The Court held a hearing on the above-referenced issues on July 14, 2015 and at the end of the hearing it determined that all of the pre-petition rents that had been collected by GW Green were not subject to turnover to the Debtor, Grass Valley, with the possible exception of $38,880.35 which was received by GW Green on or near the petition date.  The Court also continued the hearing and requested further briefing on the issue as to whom the post-petition rents belonged.

26.     Subsequent to the first hearing Grass Valley and GW Green had negotiations with respect to the $38,880.35 in rents.  GW Green agreed to return $30,354.35 to Grass Valley which it has done.

27.     The continued hearing relating to the post-petition rents was held on July 28, 2015, and the Court ruled that the post-petition rents were property of the bankruptcy estate but subject to the security interest of GW Green.   Based upon the parties' agreement and the consent of the U.S. Trustee's office, the Court ruled that the post-petition rents were to be placed into a separate debtor-in-possession account.  Thus, the rents from the Property collected post-petition constituted cash collateral which could not be used without the consent of GW Green or court order.

28.     The rental payments that were received pre-petition by GW Green had been promptly applied by GW Green to reduce the indebtedness due and owing by the Debtor, Grass Valley, on the Barnes Loans owned by GW Green.  *See* Green Declaration at ¶ 13.

29.     GW Green also used the money received from the rent checks to pay its business expenses and its creditors, including the monthly payments in the amount of $25,696.23 to State Bank in connection with the loan made by State Bank to GW Green so it could purchase the Barnes Loans from West CRE.  *See* Green Declaration at ¶ 14.

30.     GW Green was also required to make some expenditures to protect its trust deed liens against the Property because Grass Valley, as the landlord, had failed to make necessary repairs to the Property and the tenants were complaining to GW Green about those problems. *See* Green Declaration at ¶ 15.

31.     Due to tenant complaints and Grass Valley's failure to correct those problems,

GW Green advanced costs as permitted by its loan documents to address those problems and to protect its secured interests in the Property. *See* Green Declaration at ¶¶ 16, 19.

32.    The amounts advanced to preserve the collateral securing the Barnes Loans were added by GW Green to the sums due and owing on the Barnes Loans. *See* Green Declaration at ¶ 18.

33.    Subsequent to its purchase of the Barnes Loans, GW Green was also informed by counsel for West CRE that the Debtor, Grass Valley, had failed to provide proof of insurance on the Property (even though it was required to do so), and therefore, GW Green advanced money as permitted under its Deeds of Trust to make certain the Property securing the Barnes Loans was adequately insured. *See* Green Declaration at ¶ 22.

34.    The amount advanced to pay the insurance on the Property was added by GW Green to the sums due and owing on the Barnes Loans. GW Green only made the foregoing premium payment to protect its secured interests in the Property. *See* Green Declaration at ¶ 23.

35.    On the date Grass Valley filed its Petition the balances owing on the Barnes Loans were approximately $4,127,775.15 and $2,223,765.92, plus accrued expenses and fees. *See* Green Declaration at ¶ 25.

36.    In addition, the monthly payment owing to GW Green on the first Barnes Loan is $17,067.46 and the monthly payment owing on the second Barnes Loan prior to its maturity was $16,115.33.

37.    GW Green has not received the required monthly loan payments from the Debtor on the Barnes Loans since it filed its Petition in May of 2015.

38.    GW Green needs to receive payments on the Barnes Loans directly or through the

9

assignment of rents so that GW Green does not default on its loan to State Bank and subject the Barnes Loans to foreclosure by State Bank.  *See* Green Declaration at ¶ 26.

39.    GW Green has made multiple demands for adequate protection payments from the Debtor, Grass Valley.  For instance, on June 10, 2015, GW Green's counsel sent a letter to Debtor's counsel in which it indicated that the rents from the Property are GW Green's cash collateral and that it would not consent to the use of its cash collateral without adequate protection.  The letter also indicated that it was important that GW Green receive a response thereto within five days.  A copy of this letter is attached hereto as **Exhibit 13**.

40.    Similarly, in early August 2015, GW Green received a proposal from Grass Valley requesting that it be permitted to use $27,000 of GW Green's cash collateral for, among other things, the maintenance of the Property.  GW Green's counsel responded by email that the $27,000 amount was acceptable but stated that it needed monthly adequate protection payments of $30,000 from the cash collateral from the Petition Date (with May to be prorated by 50% or $15,000) primarily so that GW Green could make its loan payments to State Bank.  A copy of the email from GW Green's counsel is attached hereto as **Exhibit 14**.

41.    Notwithstanding the foregoing demands, the Debtor has refused to agree to adequate protection payments so that GW Green may pay its secured creditor, State Bank.  Thus, no adequate protection payments have been made to GW Green on the Barnes Loans.  *See* Green Declaration at ¶ 27.

42.    The Debtor's failure to make the required pre-petition loan payments as well as any post-petition cash collateral payments on the Loans has caused GW Green to locate and use other funds to make the loan the payments owing to State Bank.

43.     In addition, property taxes on the Property in the approximate amount of
$78,558.52 (based on the assessments for 2014) will become due and owing in November 2015.
A copy of the tax assessments on the Property for prior years is attached hereto as **Exhibit 15.**

44.     On July 31, 2015, Grass Valley filed its Monthly Operating Report with the
Court, a copy of which is attached hereto as **Exhibit 16** [dkt. #57].  The information in the report
reflects, among other things, as follows:

    a.  The beginning cash balance on July 1, 2015 in Grass Valley's general DIP
        account was $68,468.82 and the total cash receipts for the month of July were
        $143,201.82 (see p. 1).

    b.  The balance in the Springville Account on July 31, 2015 is reported to be
        $51,345.08.

    c.  Grass Valley made cash disbursements for the month of July in the amount of
        $82,862.77 (see Schedule B);

    d.  With respect to the cash disbursements made, the largest payments were to
        Central Bank and GEMSA Loan Services, L.P. to cover debt service owed by
        the Debtor (see Schedule B);

    e.  Other cash disbursements included a $6,000 payment to Randall Harward for
        a management fee and $208.37 to Les Schwab for auto repairs (see Schedule
        B);

    f.  On July 28, 2015, the account statement for Grass Valley's second account to
        hold the rents from the Property (the "**Springville Account")** reflects that
        only $51,344.24 was deposited by Grass Valley into that account (see Exhibit

11

16 at p. 15);

g.   Schedule A reflects a rent payment from Imsar on July 28, 2015 in the amount

of $30,354.35.  The Zion's Bank statement for Grass Valley's general bank

account (not the Springville Account) reflects a deposit on July 28, 2015 in

the amount of $30,354.35 (see Exhibit 16 at p. 13).  Thus, it appears the Imsar

rental payment for July may have been improperly deposited into Grass

Valley's general account rather than into the second account that was set up

for the specific purpose of holding the rents from the Property; and

h.   The Bank Reconciliation for Grass Valley's general account also makes a

notation to a "June 2015 rent returned from Green 7/28" in the amount of

$30,354.35 (see Exhibit 16 at p. 19).  That check, a copy of the front and

backside of which are attached hereto as **Exhibit 17**, constituted the return to

Grass Valley by GW Green of Imsar's June rent in the amount of $30,354.35.

Thus, it appears that payment from GW Green may have also been improperly

deposited into Grass Valley's general account rather than into the second

account that was set up for the specific purpose of holding the rents on the

Property.

45.   The money reflected in the debtor-in-possession account for the Springville

Property does not appear to be near the amount of rent paid by tenants to the Debtor post-

petition.  The monthly rents from the tenants on the Springville Property are $45,908.24 per

month.  Thus, the collected rents since the petition date through July 31, 2015 from the

Springville Property should be approximately $122,170.83 (i.e., [$30,354.35 x 3 from Imsar] +

12

[$8,653.89 x 2 from Standard Plumbing] + [$1,900.00 x 2 from Eaton Alliance] + [$5,000.00 x 2

from Harward Engineering].

## SUPPORTING MEMORANDUM

## I.  RELIEF FROM THE AUTOMATIC STAY SHOULD BE GRANTED FOR CAUSE UNDER § 362(d)(1) INCLUDING THE LACK OF ADEQUATE PROTECTION OF MOVANTS' INTEREST IN PROPERTY.

Section 362(d)(1) of the Bankruptcy Code provides that relief from the automatic stay

shall be granted for "cause" upon request by a party in interest after notice and hearing:

> On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of this
> section such as by terminating, annulling, modifying or conditioning such
> stay –
>
> > (1) for cause, including the lack of adequate protection of an
> > interest in the property of such party in interest.

11 U.S.C. § 362(d)(1).

Although § 362(d)(1) refers to a "lack of adequate protection," this is not the sole basis

for "cause" to lift the automatic stay.  *In re Carbaugh*, 278 B.R. 512, 525 (10th Cir. BAP 2002).

In *Carbaugh* the Bankruptcy Appellate Panel stated: "[w]hile cause under §362(d)(1) includes

'the lack of adequate protection' of an interested party in property, it is not so limited.   Because

'cause' is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary

determination made on a case by case basis." *Id*. (citation omitted).  *Id. citing Pursifull v. Eakin*,

814 F.2d 1501, 1506 (10th Cir. 1987)).  Here, cause exists for terminating the automatic stay for

including but not limited to the lack of adequate protection based upon the following grounds.

13

**A.  GW Green Interests in the Springville Property and the Rents Generated by that Property are not Adequately Protected.**

Adequate protection payments compensate a secured creditor for the diminution in value of collateral as a result of use, depreciation, destruction or other caused reduction in value.  *See* 11 U.S.C. § 361 and 363(e).  *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, (*In re Timbers of Inwood Forest Assocs., Ltd.*), 793 F.2d 1320, 1412 n. 57 (5th Cir. 1986), *aff'd United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd*, 485 U.S. 365, 108 S. Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bankr. D. Utah 1982).  The Bankruptcy Appellate Panel for the Tenth Circuit has further determined that a bankruptcy court may also consider any harm or injury to the movant if the stay is not modified.  *In re JE Livestock, Inc.,* 375 B.R. 892, 897 (B.A.P. 10th Cir. 2007).

Here, the lack of adequate protection payments to GW Green is causing harm to GW Green.  GW Green purchased the Barnes Loans from West CRE Venture 2010-2, LLC in 2014.  The Barnes Loans were acquired by GW Green in large part through a loan made by State Bank to GW Green.  The loan was documented by a promissory note executed by GW Green in favor of State Bank on November 28, 2014.  GW Green granted a security interest in the Barnes Loans to secure the acquisition loan owing to State Bank (the "**State Bank Loan**").  Pursuant to the terms of the State Bank Loan, GW Green is legally obligated to pay State Bank monthly installment payments of $25,696.23.

Prior to Grass Valley's bankruptcy petition, GW Green was able to make payments on the State Bank Loan by collecting the rents generated by the Property which had been assigned

to State Bank.  However, once Grass Valley filed its petition for relief, the post-petition rents

became property of the bankruptcy estate pursuant to §541(a).  Pursuant to this Court's ruling,

the rents are to be deposited by the Debtor into a separate debtor-in-possession account and held

as cash collateral.  GW Green has received no adequate protection payments from Grass Valley

from the cash collateral or any other source from the Debtor since its petition for relief was filed

on May 15, 2015.  Consequently, GW Green has received no money from its interest in the

Property and the rents to pay its obligations to State Bank.

     As a result of the foregoing, GW Green is being severely harmed because it is being

forced to diminish its working capital to make payments to State Bank.  Accordingly, GW Green

is in a precarious position because State Bank could foreclose its security interest in the Barnes

Loans even though it has done absolutely nothing wrong.  Based upon the foregoing, GW Green

lacks adequate protection of its interest in the Property and the rents generated by the Property

and relief from the automatic stay should be granted as a matter of law.[1]

### B.  Cause Exists Because of the Debtor's Bad Faith in Failing to Comply With the Court's Order To Place the Post-Petition Rents Into a Separate DIP Bank Account And Because it Has Been Using GW Green's Cash Collateral Without Its Consent or Court Authorization.

     The Tenth Circuit Bankruptcy Appellate Panel has determined that a bankruptcy court

may consider the good or bad faith of a debtor in addressing a relief from stay motion.  *In re JE*

*Livestock, Inc.,* 375 B.R. 892, 897 (B.A.P. 10th Cir. 2007).  Here, cause exists under § 362(d)(1)

to terminate the automatic stay because Grass Valley has acted improperly and perhaps in bad

faith for two reasons.  First, it has failed to comply with this Court's order that <u>all </u>post-petition

---

[1] In connection with the Debtor's motion for turnover of rents, this court determined that the only
procedure by which GW Green can foreclose its assignment of rents generated by the Property was

rents should be deposited into a separate debtor-in-possession account and be treated as cash collateral.  Second, it has apparently been using some of GW Green's cash collateral to operate its business without the consent of GW Green or court order.  The foregoing events are supported by the Debtor's monthly operating report.  Specifically, Schedule A of the Debtor's July Operating Report (attached hereto as Exhibit 16) shows on page 2 thereof that in the "Zion's Bank – Springville Rents" Account there was only a balance on July 31, 2015 of $51,345.08.  However, the rents collected should have been approximately $ 122,170.83 (i.e., [$30,354.35 x 3 from Imsar] + [$8,653.89 x 2 from Standard Plumbing] + [$1,900.00 x 2 from Eaton Alliance] + [$5,000.00 x 2 from Harward Engineering]).

On page 4 of the July operating report it accounts for two rent checks received by the Debtor from a tenant (IMSAR) for more than $60,000. These two payments alone amount to more than the amount in the Springville Rents DIP Account.   GW Green also turned over to the Debtor $30,354.35 in rents collected by GW Green in May. Thus, the rents paid by IMSAR, which is only one tenant of the Property, were $91,063.05.  When this amount is added to the other $31,107.78 in monthly rent owing on the Springville Property, the cash collateral in the Springville Account should be $122,170.83. Notwithstanding, the Debtor's July operating report reflects only $51,348.08 in the Springville Account.

The July operating report also reflects on page 1 thereof that the beginning cash balance on July 1, 2015 was $68,468.82 and that the total cash disbursements for July amounted to $82,862.77.  Furthermore, page 1 also shows that cash receipts for the month of July totaled $143,201.82.  Thus, it appears highly likely that the Debtor is using at least some of GW Green's

---

through the foreclosure of the Property.

cash collateral to pay its business and other expenses.

The Debtor's use of GW Green's cash collateral is unlawful and contrary to this Court's order.  Section 363(c)(2) expressly states that an entity's cash collateral cannot be used unless that entity consents, or the court, after notice and a hearing, authorizes the use of the cash collateral in accordance with the provisions of Section 363.  GW Green has not consented to the use of its cash collateral and the Court has not authorized such use.

Moreover, Grass Valley has either known or should have known from the date of the filing of its Petition that all of the rents flowing from the Property constitute GW Green's cash collateral.  Nevertheless, Grass Valley has been using GW Green's cash collateral without its permission and in contravention of bankruptcy law.  It is also interesting to note to whom some of the disbursements by Grass Valley have been paid.  The largest payments were made to Central Bank and GEMSA Loan Services, L.P. to cover debt service owed by the Debtor (see Exhibit 16, Schedule B).  Other cash disbursements included a $6,000 payment to Randall Harward for a management fee and $208.37 to Les Schwab for auto repairs (id).  The Debtor's use of the GW Green's cash collateral without agreement or court authorization in order to pay others constitutes bad faith on the part of Grass Valley.

The Court ruled on July 28, 2015 that all of the rents flowing from the Property were to be deposited into a separate debtor-in-possession account and that the funds were cash collateral and could not be used without the consent of GW Green or court order.  It appears the Debtor has not fully complied with the Court's order.  For instance, the July operating report indicates that the Debtor opened a separate bank account on July 28, 2015 and that on the same day Grass Valley received rents from the Property and deposited them into its general DIP operating

17

account.  For instance, Schedule A reflects a rent payment from IMSAR on July 28, 2015 in the

amount of $30,354.35.  The Zion's Bank statement for Grass Valley's general bank account (not

the Springville Account) reflects a deposit on July 28, 2015 of $30,354.35 (*see* Exhibit 16 at p.

13).  Thus, it appears the IMSAR rental payment for July 2015 was deposited improperly into

Grass Valley's general account rather than into the Springville Account.  The Bank

Reconciliation statement for Grass Valley's general account also makes a notation to a "June

2015 rent returned from Green 7/28" in the amount of $30,354.35 (*see* Exhibit 16 at p. 19).  That

check, a copy of the front and backside of which are attached hereto as **Exhibit 17**, constituted

the return to Grass Valley by GW Green of IMSAR's June 2015 rent in the amount of

$30,354.35.  Thus, the Bank Reconciliation for Grass Valley's general account appears to show

that the $30,354.35 payment received from GW Green was not deposited into the Springville

Account.

 The failure of the Debtor to deposit the rents from the Property into the Springville

Account and the use GW Green's cash collateral (i.e. rents collected from the Springville

Property) constitute bad faith by the Debtor. As such, cause exists to terminate the automatic stay

to permit GW Green to proceed with its foreclosure of the Property and/or the rents generated

therefrom as a matter of law.

### C.  **Cause Exists Because The Debtor Cannot Propose and Confirm a Reorganization Plan That Is Going To Alter the Terms of Payment of the Barnes Loans.**

 Courts have held that one of the critical questions in deciding whether "cause" exists to

terminate the automatic stay is based on the debtor's lack of good faith in filing for Chapter 11

relief, that is, whether there was any reasonable likelihood on the petition date as to whether the

18

debtor could reorganize through the filing of a confirmable plan of reorganization.  *See In re 68 West 127 Street, LLC*, 285 B.R. 838, 846 (Bankr. S.D. N.Y. 2002).  Where the proposed or contemplated plan is patently unconfirmable and/or has no realistic chance of being confirmed, granting relief from the automatic stay for cause is appropriate.  *See In re Curtis Center Limited Partnership*, 192 B.R. 648, 654 (Bankr. E.D. Pa. 1996).

In this case there is no realistic chance a plan of reorganization can be confirmed.  The Debtor's Schedule H (Exhibit 5) reflects that there are no co-debtors with the Debtor.  This is inaccurate.  There are co-debtors on both Barnes Loans.  The co-borrowers on the first loan are the Debtor and Harward and the co-borrowers on the second loan are the Debtor, Harward, and Grass Valley MV.  The Debtor conveyed two trust deed liens against the Property and an assignment of rents generated by the Property to secure both loans.  The reorganization of the Debtor will not and cannot reorganize the loan obligations owing by the co-borrowers.  The Barnes Loans will both remain in default despite any reorganization by the Debtor.  On the date Grass Valley filed its Petition the balances owing on the Barnes Loans were approximately $4,127,775.15 and $2,223,765.92, plus accrued expenses and fees, and the later amount has matured.   It does not appear that the Debtor's reorganization will preclude GW Green from enforcing the Barnes Loans against the Property.

### D.  Cause Exists for Terminating the Stay Exists because the Debtor Has Failed to Make any Post-Petition Loan Payments to GW Green.

Courts have recognized, that the

failure to make mortgage payments constitutes "cause" for relief from the automatic stay and is one of the best examples of a "lack of adequate protection" under Section 362(d)(1) of the Bankruptcy Code.  *See In re Taylor*, 151 B.R. 646, 648 (E.D.N.Y. 1993) ("debtor's failure to make regular mortgage payments as they become due constitutes sufficient 'cause' to lift the automatic stay").  This is

particularly true where a debtor lacks the willingness; the current means; or a realistic, near-present ability to make contractual payments to the secured creditor.

*In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008).  Likewise in *In re Uvaydov*, 354 B.R. 620, 623 (Bankr. E.D.N.Y. 2006) the bankruptcy court held that "a debtor's failure to make post-petition mortgage payments in bankruptcy rehabilitation proceedings can constitute cause for relief under § 362(d)(1)."

There is no dispute, and the Debtor's monthly financial reports confirm, that the Debtor has failed to make a single post-petition loan payment to GW Green since its petition date on May 15, 2015.  In fact, the Debtor has not made a payment on the Barnes Loans to GW Green since November 11, 2014, when GW Green acquired the Barnes Loans.  The Debtor had also failed to make monthly payments on the Barnes Loans for a long period of time prior to November 11, 2014.   Because the Debtor has failed and/or refused to make any loan payments to GW Green, Movants' motion for relief from the automatic stay should be granted as a matter of law.  *See e.g. In re Eatman*, 182 B.R. 386, 391-92 (Bankr. S.D.N.Y. 1995) (finding condominium board of managers entitled to relief from stay where (1) the debtor owner had not paid common charges in year, which implied that he would not pay such charges in the future; and (2) the apartment held as collateral was likely to decrease in value over time).

**E.  Because Cause Exists to Terminate the Automatic Stay Imposed by § 362 For Multiple Reasons the 14-day Stay Period Set Forth in Bankruptcy Rule 4001(a)(3) Should Not Apply**

Because the Debtor has failed to deposit rents from the Property into the Springville account, because the Debtor has used GW Green's cash collateral without consent or court order and because the Debtor has failed to make a single loan payment to GW Green since the petition

for relief was filed, the Court should waive the 14-day stay period provided for by Bankruptcy

Rule 4001(a)(3).

## II.  IF THE COURT DOES NOT TERMINATE THE AUTOMATIC STAY FOR CAUSE THEN GW GREEN IS ENTITLED TO ADEQUATE PROTECTION.

While the term 'adequate protection' is not defined in the Bankruptcy Code, § 361 sets

forth three (3) non-exclusive examples of what may constitute adequate protection:  (i)  periodic

cash payments equivalent to decrease in value, (ii) an additional or replacement lien on other

property, or (iii) other relief that provides the indubitable equivalent.  *In re Riding,* 44 B.R. 846,

849 (Bankr. Ut. 1984); *In re Sweetwater*, 40 B.R, at 735.

Here, adequate protection should be ordered by the Court because (a) the Debtor has

failed to deposit rents from the Property into the Springville Account, (b) the Debtor has used

GW Green's cash collateral without consent or court order, (c) the Debtor has failed to make a

single loan payment to GW Green since the petition for relief was filed, and (d) the equity in the

Property is being diminished by the use and depreciation of the building.  Thus, the Court should

order the Debtor to pay no less than $30,000 a month to GW Green since the petition date with

the month of May prorated by fifty percent.

In addition to ordering cash payments as adequate protection, Movants further request

that the Court require Grass Valley to provide GW Green with the following additional adequate

protection:  (i) proof of adequate insurance on the Property within three (3) business days

following any written request to Grass Valley's counsel; (ii) proof of payment of the monthly

insurance premium installment payment within three (3) business days prior to the installment

payment deadline; (iii) proof of renewal of adequate insurance within three (3) business days

prior to expiration of the current policy effective end-date ; (iv) immediate and continued access

to GW Green's collateral, including the Property, allowing GW Green the opportunity to inspect any portion of its collateral during normal business hours and upon no more than one (1) business day's notice, (v) Grass Valley will provide as part of its monthly operating report (or otherwise to GW Green) a statement of the rents collected on the Property and the expenses paid with those rents to maintain the Property; and (vi) if Grass Valley fails to pay all or part of the property taxes or insurance premiums owing on the Property, then GW Green may request that part of the rents be used to pay any remaining unpaid property taxes.

Based upon the forgoing, if relief from the automatic stay is not granted, this Court should order the Debtor to make monthly adequate protection payments to GW Green of no less than $30,000 per month with a fifty percent proration for the month of May 2015 together with and such additional adequate protection and as the Court deems just and appropriate.

## CONCLUSION AND REQUESTED RELIEF

Based upon the foregoing points and authorities, State Bank and GW Green's joint motion for Relief from Automatic Stay should be granted as a matter of law.

WHEREFORE, State Bank and GW Green pray the Court as follows:

1.      That State Bank and GW Green's motion for relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1) be granted so that GW Green can foreclose on the Property and exercise any other rights and remedies it may have under the Barnes Loan documents;

2.      In the event the Court terminates the automatic stay, for an order that the termination of the stay take effect immediately, and that the 14-day stay period set forth in Fed. R. Bankr. P. 4001(a)(3) expressly not apply;

22

3.      Alternatively, in the event the automatic stay is not terminated so that GW Green

can exercise its rights and remedies, for an order requiring Grass Valley to make monthly

adequate protection payments to GW Green pursuant to 11 U.S.C. § 363(e) in the amount of

$30,000, except that the adequate protection payment to be made for May of 2015 will be pro-

rated by 50% or will be $15,000;

4.      Alternatively, but in addition to paragraph 3, in the event the automatic stay is not

terminated, that Grass Valley also be ordered to provide GW Green with the following additional

adequate protection:  (i) proof of adequate insurance on the Property within three (3) business

days following any written request to Grass Valley's counsel, (ii) proof of payment of the

monthly insurance premium installment payment within three (3) business days prior to the

installment payment deadline, (iii) proof of renewal of adequate insurance within three (3)

business days prior to expiration of the current policy effective end-date, and (iv) immediate and

continued access to GW Green's collateral, including the Property, allowing GW Green the

opportunity to inspect any portion of the its collateral during normal business hours and upon no

more than one (1) business day's notice, (v) Grass Valley will provide as part of its monthly

operating report (or otherwise to GW Green) a statement of the rents collected on the Property

and the expenses paid with those rents to maintain the Property, and (vi) if Grass Valley fails to

pay all or part of the property taxes or insurance premiums owing on the Property, then GW

Green may request that part of the rents be used to pay any remaining unpaid property taxes; and

5.      For such other legal or equitable relief as the Court deems just and equitable in

the premises.

DATED this 11th, day of September, 2015.

RAY QUINNEY & NEBEKER P.C.


/s/ Steven W. Call
Steven W. Call
Elaine A. Monson
Attorneys for GW Green Family Limited
Partnership and State Bank of Southern Utah


1340633

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2015, I electronically filed the foregoing **Motion By GW Green Family Limited Partnership and State Bank of Southern Utah for an Order (1) Terminating The Automatic Stay or (2) In The Alternative, for Adequate Protection and Memorandum In Support Thereof** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system.  I further certify that the parties of record in this case, as identified below are registered CM/ECF users and will be served through the CM/ECF system:

- **Jeffrey M Armington**   armington.jeff@dorsey.com, long.candy@dorsey.com;ventrello.ashley@dorsey.com
- **Ryan R. Beckstrom**   rbeckstrom@kmclaw.com
- **J. Scott Brown**   sb@pkhlawyers.com
- **James T Burton**   jburton@kmclaw.com, hmills@kmclaw.com
- **Adam C. Dunn**   acdunn@dunnfirm.com
- **Clifford V. Dunn**   cvdunn@dunnfirm.com
- **Gary E. Jubber**   gjubber@fabianlaw.com, mparks@fabianlaw.com;hmcewen@fabianlaw.com
- **Gary E. Jubber tr**   gjubber@fabianlaw.com, UT07@ecfcbis.com;mparks@fabianlaw.com;hmcewen@fabianlaw.com
- **Adelaide Maudsley**   amaudsley@kmclaw.com
- **John T. Morgan tr**   john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- **Marcus R. Mumford**   mrm@mumfordpc.com, jen@mumfordpc.com,amanda@mumfordpc.com
- **Dianne Orcutt**   dianneo@utahcounty.gov
- **Joshua S. Ostler**   jso@mumfordpc.com, jsostler@gmail.com;jen@mumfordpc.com
- **Douglas J. Payne**   dpayne@fabianlaw.com, hmcewen@fabianlaw.com;smcnett@fabianlaw.com
- **United States Trustee**   USTPRegion19.SK.ECF@usdoj.gov
- **Steven T. Waterman**   waterman.steven@dorsey.com, bingham.karen@dorsey.com;ventrello.ashley@dorsey.com

/s/ Lisa Conterio

1340633